HENRY V. BUTLER and ROBERT L. TAYLOR *v.* THOMAS
ROGERS and others.

1. As a general rule the court ought not to interfere in cases of nuisance where the injury apprehended is of a character to justify conflicting opinions whether the injury will in fact ever be realized.

2. It is not for this court to determine whether there has been any irregularity in laying out a street. Such proceedings must stand until set aside by a legal tribunal which has authority to interfere.

This was a motion for injunction, argued at Newark, August 2d, 1853. The case, as made by the pleadings and proofs, sufficiently appear in the opinion of the Chancellor.

*A. S. Pennington* and *W. Pennington,* for the motion.

*John Hopper* and *J. P. Bradley, contra.*

THE CHANCELLOR. The defendants deny that the erection of the blacksmith shop as contemplated by them, will be injurious to the complainant's business. They admit that they intend to erect the shop with the ordinary chimneys. They insist that *such* chimneys are more convenient for themselves, and are less objectionable to their neighbors, on account of the dust, cinders and soot, than the high chimneys. The only complaint in the bill is, that the dust, cinders and soot from the low chimneys, with a northerly wind, would be thrown into the paper mill, endanger the mill by reason of the sparks, rendering it uncomfortable to the workmen, and blacken and spot the pulp before it is made into paper. The complainants insist that a blacksmith's shop, constructed in any manner, located as this will be, will be a nuisance to them, and should be prohibited. But they ask, in case the court should not be willing to prohibit the erection altogether, that such restrictions may be put upon the de-

fendants as to compel them to construct their forges with one large chimney.

In the case of 'Rogers et al. v. Danforth et al., decided in February Term last, (*Stn. R.*, *p.* 289,) the complainants, who were the owners of a cotton mill, filed their bill to enjoin the defendants from erecting, within fifty feet of their mill, a large blacksmith shop with a number of forges, alleging it would be a nuisance and would destroy the complainants' business.. The defendants, in that case, put themselves upon the ground that they intended to erect their shop with one large chimney, which would be the reservoir for all their fires and forges; that this was the modern improved plan, and that with such a chimney the injurious consequences apprehended would be avoided. There was much evidence in that case, and it was such as induced me, without any hesitation, to refuse the injunction, on the ground that the evidence satisfied me that the high chimney would avoid the mischief apprehended.

In the case now before me, a large number of witnesses have been examined as to the comparative advantages of the high and low chimneys, and I must confess the weight of the evidence is very strongly in favor of the latter. The manner in which this subject has been presented to me in these two cases, warns me of the very great caution to be observed in granting injunctions in cases of mere apprehended mischief, and where there is room for such contrariety of opinion.

These defendants have been carrying on, for the last twenty years, a large manufacturing establishment. In the enlargement of their works, the erection of an additional blacksmith's shop has become necessary. The place where they contemplate erecting it is not only convenient, but it is the only lot, they allege, that they own in the vicinity suitable for the purpose. To prohibit its erection altogether would be a serious damage to them. For the court to undertake to decide that they should erect their works in any particular manner, when there is much conflicting testimony,

whether such is the best mode of erecting them, is assuming an unnecessary responsibility.

The defendants were carrying on their business where they now are when the complainants became the proprietors of their mill. The business of the defendants was such as to require forges. In enlarging their works, they ought so to erect them as to do no unnecessary injury to the complainants. The defendants insist they will do the complainants no injury; and they produce before the court the testimony of a large number of witnesses, to show that the apprehensions of the complainants are not well founded. If the evidence before me can be relied upon, the blacksmith's shop will not be a nuisance. If the evidence were balanced, I should not feel justified in interfering. But it very strongly preponderates in favor of the defendants' answer. Should, however, the consequences follow, which the complainants apprehend, there is no suggestion in the bill that the defendants are not able to meet any demand that may be made upon them in a legal way for damages. As a general rule, the court ought not to interfere in cases of nuisance, where the injury apprehended is of a character to justify conflicting opinions, whether the injury will, in fact, ever be realized.

As a ground for relief, the complainants allege that " The Society for Establishing Useful Manufactures" were originally the proprietors of all the water power at Paterson, and have, from time to time, leased or sold mill lots with water power, to divers grantees and lessees, and had, at the date of their lease to the complainants, in all cases, as far as the complainants know and believe, covenants inserted in all their leases and grants, calculated to protect the other lessees and grantees from nuisances, and, among other clauses, inserted covenants restraining their lessees and grantees from erecting forges or furnaces, and that such provision was incorporated in their lease, and that they understood and took their said lease upon the express understanding that such provision was, and would thereafter be incorporated in all the leases and deeds of said society for mill lots, and that

the mill lot upon which the blacksmith's shop is to be erected was, at the date of their lease, leased to one Walker, by the said society, and that there was a provision inserted in the lease to Walker, that no forge or furnace should be erected on said lot.

The counsel for the complainants did not argue that they could ask the court to interfere, by virtue of the covenant referred to. They insisted it was entitled to the consideration of the court, in viewing the subject upon its general merits. If true that such a covenant was inserted in all the leases, and if the lessees, in observance of it, had erected their works, and if the complainants and defendants, with a mutual understanding that they would regard such covenant, had enlarged and carried on their business, although the one party might have no legal claim against the other, through or upon the covenant, it might have weight with this court on a question for injunction, if, in other respects, the right of the complainants to an injunction was doubtful.

The defendants deny that any covenants of the force and effect stated by the bill were inserted in the leases, and they allege that the Walker lot, on which they propose building, has, since the year 1841, been leased to several tenants, without any restriction whatever. They set up in their answer, and they show by evidence, that they have had within one hundred and fifty feet of the complainants' mill, ever since its erection, a blacksmith's shop, and that the complainants themselves have had, and now have within one hundred feet of their mill, a blacksmith's shop of their own.

Under such circumstances, I do not see that the complainants can claim any benefit from the covenants, even if they were of the character alleged in the bill.

There is another ground upon which the court is asked to interefere. It is alleged that the defendants are erecting their shop on a public street, and that, by so doing, they are bringing their building nearer to the complainants' mill than they have any right. In answer to this allegation, the defendants say that the street was laid out by the public authority of the city of Paterson, and they produce the record.

The complainants reply that the street was irregularly laid out, and that it was done without first vacating the old road. It is not for this court to determine whether there has been any irregularity in laying out the street. The proceedings were by a competent authority and will stand until set aside by a higher legal tribunal, who has authority to interfere.

The motion for injunction is denied, with costs.

CITED *in* *Ross* v. *Butler*, 4 *C. E. Gr.* 305.